# SUPREME COURT OF THE UNITED STATES

———————

No. 22A463

———————

## KEVIN JOHNSON *v.* MISSOURI

### ON APPLICATION FOR STAY

[November 30, 2022]

The application for stay of execution of sentence of death presented to JUSTICE KAVANAUGH and by him referred to the Court is denied.

JUSTICE JACKSON, with whom JUSTICE SOTOMAYOR joins, dissenting from denial of application for stay.

We denied Kevin Johnson's application for an emergency stay of his execution on November 29, 2022, and the State of Missouri has carried out that penalty. Now, one day later, I write to explain my vote to grant his stay request. For the reasons that follow, in my view, there was a likelihood that Johnson would have succeeded on the merits of his federal due process claim, and it was clear that he would (and obviously did) suffer irreparable harm absent a stay. I also believe that the equities weighed in Johnson's favor.

Missouri has created a system in which prosecutors may assess the validity of a state prisoner's final conviction, see Mo. Rev. Stat. §547.031 (Cum. Supp. 2021), and having done so, it was required to comply with due process when applying that law in Johnson's case. See *District Attorney's Office for Third Judicial Dist.* v. *Osborne*, 557 U. S. 52, 69 (2009); *Hicks* v. *Oklahoma*, 447 U. S. 343, 346 (1980); *Wolff* v. *McDonnell*, 418 U. S. 539, 556–557 (1974). In rare cases, a litigant can credibly claim that a State's erroneous interpretation of, or refusal to comply with, its own law can amount to a federal due process violation. See *Skinner* v.

*Switzer*, 562 U. S. 521, 530 (2011); *Bouie* v. *City of Columbia*, 378 U. S. 347, 356 (1964).

This is one of those rare cases. Missouri's Revised Statute §547.031 provides a three-step process for reviewing the integrity of a conviction. First, a prosecutor can file a motion to vacate if she "has information that a convicted person . . . may have been erroneously convicted." §547.031.1. A prosecutor filed such a motion with respect to Johnson. Second, "upon the filing of [such] a motion to vacate," the court "shall order a hearing and shall issue findings of fact and conclusions of law on all issues presented." §547.031.2. No Missouri court here has disputed that this hearing is mandatory or that it was not provided to Johnson. Third, the court must grant the motion to vacate if "the court finds there is clear and convincing evidence of . . . constitutional error," after "tak[ing] into consideration" all of the evidence related to the case, including the "evidence presented at the hearing on the motion." §547.031.3.

The Missouri Supreme Court turned this straightforward procedural statute on its head. While acknowledging that there was no motion hearing in Johnson's case, the court assumed away that violation of the statute's procedural requirements and denied the motion to stay on the grounds that there was insufficient evidence to support the motion to vacate. It reasoned that "[e]ven assuming that it was error for the circuit court to overrule the Special Prosecutor's motion to vacate Johnson's conviction without the hearing and express findings of fact and conclusions of law," Johnson was not entitled to a stay because the motion to vacate fell "short of the showing required by section 547.031.3, i.e., that there be 'clear and convincing evidence' demonstrating a 'constitutional error at the original trial . . . that undermines the confidence in the judgment.' " Order on Motions for Stay of Execution, No. SC89168 (Nov. 20, 2022), pp. 13–14 (Order).

The Missouri Supreme Court's reading—which skipped

over the mandatory second step of the State's conviction-review process and went straight to the third—flouted the plain language of a statute that clearly contemplates that the three required steps will proceed *in order*. See §547.031.3 (requiring that the court's findings and conclusions about a properly filed motion to vacate be based, in part, on "evidence presented at the hearing on the motion"). What is more, the court's determination that there was not "clear and convincing" evidence to support the motion to vacate *in the absence* of a hearing in which there would have been a chance to produce such evidence, as the statute requires, transgressed core procedural due process principles. See *Gagnon* v. *Scarpelli*, 411 U. S. 778, 786 (1973) (noting that the "'minimum requirements of due process'" include an "'opportunity to be heard in person and to present witnesses and documentary evidence'"). Indeed, it is unclear how the Missouri Supreme Court could have validly determined whether there was "clear and convincing evidence" of a constitutional error when the mandatory hearing at which evidence relevant to that determination would have been presented did not occur.

In short, a State cannot provide a process for postconviction review (like that outlined in §547.031) and then arbitrarily refuse to follow the prescribed procedures. But that appears to be what happened in this case, insofar as §547.031 was properly invoked through the filing of a motion to vacate but the Missouri Supreme Court determined that the reviewing court did not need to hold the mandatory hearing that allows for the presentation of evidence related to that motion, because, regardless, there was insufficient evidence to sustain the motion. In my view, this reading of §547.031 was so fundamentally flawed, and so at odds with basic due process principles, that Johnson was likely to succeed in establishing that the procedures afforded in connection with the §547.031 motion amounted to a Fourteenth Amendment violation.

As for irreparable harm, Johnson's execution irrevocably mooted our consideration of his due process claim, and Missouri would have suffered no discernible harm if a stay had issued, as a State has no legitimate interest in carrying out an execution contrary to §547.031 or due process. Furthermore, Johnson had the better of the equities, since he diligently pursued his claims, and the last-minute nature of his motion for a stay was neither attributable to him nor due to factors within his control.

It is also noteworthy that Johnson's prior and unsuccessful assertion of claims concerning selective prosecution and *Batson* v. *Kentucky*, 476 U. S. 79 (1986), did not preclude the invocation of §547.031 and Johnson's corresponding federal due process claim, notwithstanding the Missouri Supreme Court's contrary suggestion. See Order 11–12, 16, 19. If the required hearing had been held, someone might have pointed out that §547.031 itself "permits a prosecuting attorney to present all evidence relevant to such claims, regardless of whether the defendant is procedurally defaulted from raising such claims." *Id.*, at 8 (Breckenridge, J., dissenting). In any event, it appears that much of the evidence that could have been presented at the nonexistent hearing was *new* evidence relating to the trial prosecutor's racially biased practices and racially insensitive remarks. And now that evidence will not be considered on the merits by *any* court, much less the one that was supposed to base its conclusions about the validity of Johnson's conviction on all such evidence, per the statutory mandate.

For all of these reasons, I would have granted the stay.